Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 426 | **DATE** | 4/5/2000 |
| **CASE TITLE** | Erickson vs. Baxter Healthcare, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to dismiss (37-1) is denied. Plaintiff has 60 days to induce the trustee in bankruptcy to abandon those claims as set forth in the Memorandum Opinion and Order attached hereto. Plaintiff's motion for a stay is denied as moot. Enter Memorandum Opinion and Order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 7 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 06 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 52 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 4/5/2000 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA ERICKSON, individually and as personal representative of the estate of Walter Erickson, deceased,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER HEALTHCARE, INC.; BAYER CORPORATION; ARMOUR PHARMACEUTICAL COMPANY; ALPHA THERAPEUTIC CORPORATION; and NATIONAL HEMOPHILIA FOUNDATION<br><br>Defendants. | No. 99 C 426<br><br>DOCKETED<br>APR 06 2000 |

## MEMORANDUM OPINION AND ORDER

Walter Erickson was a hemophiliac. The defendants in this case gave him plasma factor tainted with hepatitis B and C and HIV, causing his death. They argue here that his surviving spouse's state law wrongful death and survival actions for negligence should be dismissed because Mr. and Ms. Erickson declared bankruptcy before his death, and these causes of action became, by operation of law, the exclusive property of the bankruptcy estate, so Ms. Erickson lacks standing to sue as a representative of her husband's estate or on her own behalf. Ms. Erickson, for her part, moves for a stay to join the bankruptcy trustee to this case. I deny the

defendants' motion to dismiss and Ms. Erickson's motion for a stay.

I.

Mr. Erickson was, and Ms. Erickson still is, a citizen of Arizona, but they formerly resided in Illinois, where he worked as a truck driver. He suffered from hemophilia A, a hereditary illness that inhibits blood clotting and creates risks of uncontrolled bleeding. It can be treated by transfusions of clotting factors derived from human blood plasma--in the case of hemophilia A, factor VIII. Mr. Erickson had received factor VIII intravenously since at least 1979. It is produced by the defendants: Baxter Healthcare, a Delaware corporation with its principal place of business in Deerfield, Illinois; Bayer Corporation, an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania; Armour Pharmaceutical, a Delaware corporation with its principal place of business in Bluebell, Pennsylvania; and Alpha Therapeutic, a California corporation with its principal place of business in Los Angeles, California. The National Hemophilia Foundation has been dismissed from this action.

Ms. Erickson alleges that there are over 20,000 hemophiliacs in the country, and the majority of them have been infected with HIV. Factor VIII, like all blood factors, is processed by the defendants into a concentrate from blood contributed by donors,

most of whom are paid, and many of whom are at greater risk than the general population for communicable virus infections. The concentrate is then administered intravenously to patients by medical personnel. Ms. Erickson alleges that the defendants obtained plasma for their concentrates from sources where there was known to be an unreasonably high risk of infection, e.g., from prisoners or plasma donor centers frequented by intravenous drug users or where there was a higher than normal practice of unsafe sex.

Ms. Erickson contends, first, that despite the existence by 1981 of technologies to test for, and eliminate the risk of, hepatitis virus in factor VIII, the defendants did not use these technologies; and, second, despite the known risk that a transmissible agent (later identified as HIV) was contaminating factor products, the defendants did not warn hemophiliacs like Mr. Erickson of the risk.

While living in Illinois, Mr. Erickson was infected with HIV, and contracted AIDS as well as hepatitis B and C. He had come to believe by April 1991 that the infections were due to his use of factor concentrates. Unless Mr. Erickson's illness derived from some other source, which the defendants do not allege, it is virtually certain that his fatal illnesses were caused by tainted

plasma, and in any case I must assume this to be true for purposes of this motion. If so, the real issue in the case would be fault and not causation.

In November 1991, Mr. and Ms. Erickson filed for bankruptcy, and that case was closed in April 1992. They did not list or "schedule" any cause of action relating to Mr. Erickson's illnesses in their bankruptcy filings. In March 1993, however, Mr. Erickson filed a state court case charging the defendants with negligence in causing his illnesses. It was dismissed when he joined a class action filed in Northern Illinois district court in September 1993. On December 9, 1998, the district court severed Mr. Erickson's claims and directed him to file a new complaint. Mr. Erickson died in Arizona on December 28, 1998, of complications associated with AIDS and hepatitis. Pursuant to the district court's order, Ms. Erickson filed this case in January 1999 on her own behalf and as representative of Mr. Erickson's estate.

II.

Although jurisdiction is logically determined prior to choice of law, I begin with a choice of law issue that affects how the jurisdictional issue is framed, although not its outcome. Ms. Erickson attempts to invoke the law of Arizona, the state where she and her husband lived, and defendants oppose this, arguing for

Illinois law. A federal court decides choice of law questions in accordance with the choice of law principles of the state in which it sits. *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996). Illinois uses the "most significant contact" approach of the Restatement (Second) of Conflicts of Law. *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. App. Ct. 1996) (*citing Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970)). In determining the most significant relationship, I consider what sort of case it is (tort, contract, etc.) and examine, for each separate claim: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. *Frederick v. Simmons Airlines, Inc.* 144 F.3d 500, 503-4 (7th Cir. 1998) (*citing Esser*, 661 N.E.2d at 1141). I also consider the interests and public policies of potentially concerned states as they relate to the transaction. *Id.* at 504 (*citing Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (1997)).

The two most important factors under Illinois choice of law rules are the place where the injury occurred and the place where the injury-causing conduct occurred. *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (*citing Ferguson v. Kasbohm*, 475

N.E.2d 984, 986 (Ill. App. Ct. 1985)). With respect to the wrongful death claim, see 740 ILCS 180/1, the place of injury in this case was Arizona, where Mr. Erickson died. *See Bradbury v. St. Mary's Hospital of Kankakee*, 652 N.E.2d 1228, 1230 (Ill. App. Ct. 1995) ("In a wrongful death action, the place of the wrong is the place of the decedent's death.").

The injury-causing conduct here, however, took place mainly in Illinois, where the defendants allegedly failed to adopt appropriate technologies to screen plasma or provide hemophiliacs with suitable warnings. Ms. Erickson does not allege that Mr. Erickson was harmed by any negligence that the defendants may have committed in Arizona. The only thing that Ms. Erickson herself suggests as favoring the choice of Arizona law is that she and her husband were domiciled there. Morever, Illinois has a greater interest in this case than Arizona because it has an interest in preventing harm due to negligence in preparation, testing, and warnings concerning medical treatment of a sort alleged here to have occurred in Illinois. Arizona wrongful death law might be in fact more favorable for the defendants than Illinois law, but defendants argue that I should use Illinois law, and for the reasons explained, I shall.

Unlike a wrongful death action, a survival action, *see* 755 ILCS 5/26-6, acts to preserve rights of action for personal injury that accrued before the death of the injured person. *Ellig v. Delnor Community Hosp.*, 603 N.E.2d 1203, 1206-7 (Ill. App. Ct. 1992). A tort cause of action accrues when facts exist that authorize the bringing of an action.[1] *Fetzer v. Wood*, 569 N.E.2d 1237, 1242 (Ill. App. Ct. 1991). Ms. Erickson does not argue that the negligence claims she seeks to maintain under the Survival Act accrued only when Mr. Erickson moved to Arizona; indeed, Mr. Erickson filed his first lawsuit based on these claims in Illinois in 1993. There would appear to be nothing to favor the choice of Arizona law but the fact of his later domicile there, and that is not enough. I apply Illinois law here as well.

III.

Standing is a question of subject matter jurisdiction.[2]

---

[1] The "discovery rule" does not actually provide a new accrual rule but tolls the running of the statute of limitations until a plaintiff's discovery of an existing cause of action. *Id.* at 1243.

[2] In order for a party to bring suit in federal court, three constitutional requirements for standing under Article III must be met: (1) the party must have personally suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one that is likely to be redressed by a favorable decision. *United Transp. Union v. Surface Transp. Bd.* 183 F.3d 606, 611 (7th Cir. 1999) (*citing Lujan v. Defenders of*

*Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). On a motion to dismiss for lack of subject matter jurisdiction, I read a complaint liberally and accept as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). The plaintiff has the obligation to establish jurisdiction by competent proof. *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998). I may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

A.

The defendants' argument that Ms. Erickson lacks standing is as elegant as it is chilling. Even if the defendants negligently caused Mr. Erickson's death by giving him tainted factor VIII, the argument goes, she cannot sue because her causes of action became the property of the bankruptcy estate when the Ericksons declared bankruptcy in 1991. Section 541 of the Bankruptcy Code provides that

---

*Wildlife*, 504 U.S. 555, 560 (1992)).

upon the commencement of a bankruptcy case, an estate is created comprising "all legal and equitable interests of the debtor in property . . . ." 11 U.S.C. § 541(a)(1). A cause of action is property, see *Saltzberg v. Fishman*, 462 N.E.2d 901, 905 (Ill. App. Ct. 1984), and has been so regarded for purposes of the Bankruptcy Code. See *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 490-91 (3d Cir. 1997).[3] The Ericksons did not list or "schedule" any causes of action connected with Mr. Erickson's illness in their bankruptcy filings, but under § 554(d), unscheduled property not abandoned by the trustee under § 554(a) or (b) remains part of the estate even when the case is closed. The trustee has not abandoned any such causes of action, so they remain the property of the estate. Therefore, perversely, the Ericksons have not been legally injured by Mr. Erickson's illnesses and death, even if these were caused by the defendants' negligence, since their right to sue belongs to the bankruptcy estate and can only be exercised, if at all, by the trustee in bankruptcy. Because she lacks the requisite injury in fact demanded by *Lujan v. Defenders*

---

[3] See also H.R. Rep. No. 95-595, 95th Cong. 2nd Sess. at 175-76 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6135-37 (noting that the new Bankruptcy Act defined the debtor's estate to include "all interests, such as interests in real or personal property, 'tangible and intangible property, choses in action, causes of action'").

of *Wildlife*, 504 U.S. 555, 560 (1992), Ms. Erickson has no standing to sue, and I must dismiss her complaint.

This an argument that only a lawyer could admire, but the defendants are correct that there is a real issue of standing here. Ms. Erickson's response that the question is one of the "real party in interest" rather than one of standing is without merit. Standing is an absolute jurisdictional requirement to sue in federal court, *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982), and, contrary to Ms. Erickson's suggestion, not merely in cases against the government. Ms. Erickson argues that the doctrine of standing has "little utility in suits between private parties who have clearly enforceable interests." If so, that is not because the standing requirement need not be satisfied, but because in such cases it is obviously satisfied. Here, however, the question is whether Ms. Erickson *has* an enforceable interest. If she gave up her right to sue on any matter connected with Mr. Erickson's illness and death when they declared bankruptcy, she has no such right.

B.

With respect to the Illinois Wrongful Death Act, 740 ILCS 180, *et seq.*, however, she clearly does have such a right. The cause of action did not accrue until Mr. Erickson died in 1998, and therefore

-10-

could not have become part of the bankruptcy estate created in 1991 when he filed for bankruptcy because it did not exist at that time. A wrongful death action is premised upon the defendants' wrongful conduct resulting in death, *Vaughn v. Granite City Steel Div. of National Steel Corp.*, 576 N.E.2d 874, 880 (Ill. App. Ct. 1991), but unlike the Survival Act, the Wrongful Death Act does not provide for the survival of a right of action the decedent had for damages he incurred. It rather governs the right of the surviving spouse and next of kin to recover for their own pecuniary injuries suffered as a consequence of the death of the decedent. *See Wyness v. Armstrong World Indus., Inc.*, 546 N.E.2d 568, 571 (Ill. 1989). As noted, therefore, the action accrues upon the decedent's death and provides a remedy for damages incurred as a result of the death itself. *Bradbury v. St. Mary's Hosp. of Kankakee*, 652 N.E.2d 1228, 1229 (Ill. App. Ct. 1995). Not only is death an element of such an action, it is the last element necessary to render an actor liable for the pecuniary injuries suffered by the surviving spouse and next of kin. *Id.* at 1230. Mr. Erickson died in 1998, and Ms. Erickson could not have sued under the statute before then, and certainly not before the creation of the bankruptcy estate in 1991.

The defendants argue that the Wrongful Death Act says that there will be no liability unless the decedent could have maintained an action for damages if death had not ensued. *Varelis v. Northwestern Mem. Hosp.*, 657 N.E.2d. 997, 1001 (Ill. 1995). On the defendants' interpretation, however, in these circumstances there could never be liability under the Wrongful Death Act, because plaintiff must be dead to sue, but cannot sue unless he could have sued if he were not dead, which he could not have done because he was alive. This is a classic Catch-22.[4] The Illinois Supreme Court, however, has sensibly interpreted the counterfactual statutory language not to mean that the statute defeats itself but

---

[4] "'Catch-22?' Yossarian was stunned. 'What the hell does Catch-22 got to do with it?'

'Catch-22 ... says you've always got to do what your commanding officer tells you to do.'

'But the Twenty-seventh Air Force says I can go home with forty missions.

"But they don't say you have to go home. And regulations do say you have to obey every order.

'That's the catch. Even if the colonel were disobeying a Twenty-seventh Air Force order by making you fly more missions, you'd still have to fly them, or you'd be guilty of disobeying an order of his. And then Twenty-seventh Air Force would really jump on you.'

'That's some catch, that Catch-22,' [Yossarian] observed.

'It's the best there is,' Doc Daneeka agreed."

Joseph Heller, *Catch-22* 60 (1961).

that multiple recoveries in personal injury and wrongful death for the same injuries are precluded, 657 N.E.2d at 1000 (*citing Mooney v. City of Chicago*, 88 N.E. 194, 196 (Ill. 1909)). Because a district court sitting in diversity must apply state substantive law as interpreted by the highest state court, *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090, 1092 (7th Cir. 1998), and because absurd constructions are to be avoided, *id.* at 1091, I reject the defendants' proposed reading. Accordingly, the wrongful death action properly belongs to Ms. Erickson, who has standing to sue under that statute, and I have jurisdiction over this claim.

C.

The Survival Act claims are a different story. Illinois law provides for the survival of a decedent's claim for pre-death physical injuries, including conscious pain and suffering. Suit to recover damages for such injuries is to be brought on behalf of the estate by the administrator. *Bass v. Wallenstein*, 769 F.2d 1173, 1189 (7th Cir. 1985). Unlike a wrongful death action, a survival action must have accrued prior to death. *Fetzer v. Wood*, 569 N.E.2d 1237, 1242 (Ill. App. Ct. 1991). A tort cause of action in Illinois accrues at the latest when the plaintiff discovers, or should have discovered, facts establishing the elements of a claim. *Kaplan v.*

*Shure Brothers, Inc.*, 153 F.3d 413, 421 (7th Cir. 1998) (*citing Barratt v. Goldberg*, 694 N.E.2d 604, 607 (Ill. App. Ct. 1998) (malpractice context). Mr. Erickson's own surviving negligence claims accrued before the Ericksons filed bankruptcy, since he admitted that he was aware of the HIV infection and its source by April 1991, months before the bankruptcy commenced in November of that year. Likewise undisputed discovery material reveals that Mr. Erickson knew of his hepatitis infections before his bankruptcy.

Ms. Erickson argues that she only seeks damages for the period after the bankruptcy. But she could not recover any damages, however limited, under the Survival Act if the cause of action was not hers, and it was not. She had a cause of action when it accrued before the filing; it was rolled into the bankruptcy estate; and it has not been abandoned by the trustee in bankruptcy. Property of the estate that is not abandoned under § 554 of the Bankruptcy Code and not administered in the case remains the property of the estate. 11 U.S.C. § 554(d). The trustee in bankruptcy has, with certain immaterial exceptions, the exclusive right to sue on behalf of the debtor's estate, *In the Matter of Heath*, 115 F.3d 521, 523 (7th Cir. 1997), and so Ms. Erickson cannot, at this point, bring a survival action.

That does not end the matter, however. Mr. Erickson's surviving tort claims have not been abandoned, but they might be abandoned if she were to ask. The trustee has the power, after notice and a hearing, to abandon any property that is burdensome or of inconsequential benefit or value to the estate. 11 U.S.C. § 554(a). Property can be abandoned after the close of a bankruptcy case. *See Schmidt v. Esquire, Inc.*, 210 F.2d 908, 914 (7th Cir. 1954). The bankruptcy court need not be involved. A trustee may abandon property without involvement of the court if no party in interest objects to the action. *In the Matter of Trim-X, Inc.*, 695 F.2d 296, 300 (7th Cir. 1983). The trustee may abandon an action to a third party, and that party may then pursue it. *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1346 (7th Cir. 1987).

Since I have jurisdiction over the wrongful death action in any event, the motion to dismiss the survival action is premature. Ms. Erickson has sixty days to induce the trustee in bankruptcy to abandon Mr. Erickson's own surviving claims, at which point I shall if necessary renew consideration of the defendants' motion to dismiss those claims. In view of this determination, I deny as moot Ms. Erickson's motion for a stay to have the bankruptcy trustee joined.

IV.

The defendants' motion to dismiss Ms. Erickson's Wrongful Death Act claim is DENIED. Their motion to dismiss Mr. Erickson's Survival Act claims is DENIED as premature. Ms. Erickson has sixty days to induce the trustee in bankruptcy to abandon those claims. Ms. Erickson's motion for a stay is DENIED as moot.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

Dated: April __, 2000

Copies are being mailed to:

| | |
|---|---|
| Debra A. Thomas<br>Attorney at Law<br>1200 Jorie Blvd., #329<br>Oak Brook, IL  60523 | Pamela L. Gellen<br>Lowis & Gellen<br>200 W. Adams Street, #1900<br>Chicago, IL  60606 |
| Richard J. Doyle<br>Attorney at Law<br>1022 N. Vermilion Street<br>Danville, IL  61832 | Duncan Barr<br>O'Connor, Cohn, Dillon & Barr<br>101 Howard Street, 5th Fl.<br>San Francisco, CA  94105-1619 |
| Rodney E. Forbes<br>Seeger & Forbes<br>P.O. Box 878<br>LaFayette, IN  47902-0878 | Gregory Beihl<br>Williams & Montgomery, Ltd.<br>20 N. Wacker Drive, #2100<br>Chicago, IL  60606 |
| Attorneys for Plaintiff | Charles G. Albert<br>Albert, Whitehead & McGaugh<br>One South Wacker Drive, #1990<br>Chicago, IL  60606 |
| | Sara J. Gourley<br>Sidley & Austin<br>10 S. Dearborn<br>Chicago, IL  60603 |
| | Attorneys for Defendants |