# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 426 | **DATE** | 2/9/2001 |
| **CASE TITLE** | Erickson vs. Baxter, t al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting in part and denying in part plaintiff's motion to bar certain opinions of defendants' experts and to bar Dr. Lazerson (82-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 9 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 12 2001 | |
| | Notified counsel by telephone. | | date docketed | 142 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 2/9/2001 | |
| | Copy to judge/magistrate judge. | FEB -9 PM 5:39 | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA ERICKSON, Individually and )
as Personal Representative of )
the Estate of Walter Erickson, )
Deceased, )
)
Plaintiff, )
)
v. ) No. 99 C 0426
)
BAXTER HEALTHCARE, INC., a )
foreign corporation; BAYER )
CORPORATION, a foreign )
corporation; ARMOUR PHARMACEUTICAL )
COMPANY, a foreign corporation; )
and ALPHA THERAPEUTIC CORPORATION, )
a foreign corporation, )
)
Defendants. )

DOCKETED

FEB 1 2 2001

## MEMORANDUM OPINION AND ORDER

Walter Erickson was a hemophiliac who received intravenous transfusions of commercial blood factors manufactured by the defendants in this case. He died of AIDS and hepatitis in 1998. Ms. Erickson, his surviving spouse, claims that the factors were infected with hepatitis B and C and HIV. She brings a wrongful death and a survival action against the defendants. She moves to bar defendants experts from testifying about certain opinions on the ground that they are irrelevant, prejudicial, and do not meet the standards for expert testimony under Federal Rule of Evidence

702. I grant Ms. Erickson's motion in part and deny it in part.[1]

I.

When Mr. Erickson was eight years old, he was diagnosed with hemophilia, a hereditary illness that inhibits blood clotting and creates risks of uncontrolled bleeding. Hemophilia can be treated by a transfusion of clotting factors from human blood plasma. Mr. Erickson received intravenous factor concentrates beginning when he was a teenager. Mr. Erickson became infected with hepatitis B and C and HIV, and he died in 1998 of complications associated with AIDS and hepatitis.

Ms. Erickson alleges that commercial factor concentrates like the ones manufactured by the defendants present a high risk of hepatitis and HIV infection. Factor concentrates are processed from blood and plasma contributed from donors, many of whom are paid, and many of whom are at greater risk for dangerous viral infections than the rest of the population. Ms. Erickson claims that there were technologies in existence by 1981 to test for and eliminate the risk of hepatitis infection and that the defendants did not use these technologies. She also contends that the defendants were aware of the risk that a transmissible agent (later

---

[1] This opinion does not address the issue of the number of experts that will be allowed to testify at trial. Under the Local Rules, only one expert witness on a subject may testify. See Local Rules, Appendix A, Form LR 16.1.1., Final Pretrial Order, n.7. Defendants will be required to justify testimony from more than one of these experts.

identified as HIV) was contaminating factor products and that they did nothing to warn hemophiliacs like Mr. Erickson of the risk of infection. Ms. Erickson challenges the opinions of several of the defendants' experts.

II.

The amended Rule 702, governing the admissibility of expert testimony, now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule essentially codifies the principles enunciated in the line of cases following *Daubert v. Merrill Dow Pharm. Inc.*, 509 U.S. 579 (1993), requiring that expert testimony must be reliable to be admissible. What has been added are three new "reliability" requirements: reliable data, reliable methodology, and reliable application of the methodology. Trial judges must act as "gatekeepers" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The first step is to determine whether the testimony is "scientific knowledge" that has been subjected to the scientific method. *Id.* at 590. Four factors bear on the reliability of expert testimony: (1) the testability of the

hypothesis; (2) whether the theory or technique has been subject to peer review or publication; (3) the known or potential rate of error; and (4) whether the technique is generally accepted. *Id.* at 593-94. The second step is to determine whether the expert's testimony would be helpful; that is to say, whether it is sufficiently tied to the facts of the case to help the jury resolve some factual dispute. *Id.* at 591. If an expert offers no support for an opinion, however, it is impossible to evaluate the testimony in terms of the factors laid out in *Daubert* so the testimony is excludable. *See, e.g., Dukes v. Illinois Cent. R.R. Co.*, 934 F. Supp. 939, 949 (testimony did not meet *Daubert* standards where no support was given).

III.

Ms. Erickson offers the testimony of Dr. Mosley, a hematologist. The defendants have disclosed five experts to rebut the testimony of Dr. Mosley. Ms. Erickson has objected to specific opinions of each of the witnesses as unsupported, and she objects to testimony by any of the proffered experts about the likelihood that Mr. Erickson was infected with hepatitis by a needlestick or that his hepatitis was aggravated by alcohol abuse. I go through her objections expert by expert, but her objections to Dr. Holland's testimony are addressed in the discussion of the other doctors' testimony.

### A. Dr. Kingsley

Ms. Erickson's first objection is to Dr. Kingsley's opinion that "chronic hepatitis B develops in only 5-10% of those who become infected." Dr. Kingsley does not identify any source for his opinion or statistics. The defendants argue that "it is clear that Dr. Kingsley is relying upon his many years of experience in epidemiology."

Although Rule 702 allows witnesses to be qualified on the basis of experience, and permits them to testify in the form of an opinions, see *Walter v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000), it does not permit experts to testify to any opinion based on general experience. *Daubert* clearly requires that opinions given under Rule 702 "pertain to 'scientific knowledge,'" not "subjective belief or unsupported speculation." 509 U.S. at 590. Dr. Kingsley must point to some specific relevant experience that would allow me to determine that his statistical testimony is reliable. To allow doctors to testify about specific statistical or medical questions and base their testimony only on general experience would be to say that doctors are qualified experts on every medical subject merely because they wear white coats.

I am especially reluctant to consider Dr. Kingsley's general medical background as a reliable source for statistical evidence in particular. Statistical evidence must have a specific source to be reliable; a number pulled out of the air is not "scientific

knowledge." Dr. Kingsley is barred from offering statistics on viral chronicity in his testimony. For the same reasons, Dr. Holland is also barred from testifying that evidence of primary HIV infection occurs in less than 20% of patients.

Second, Dr. Kingsley offers an opinion about the time of Mr. Erickson's HIV infection. He disagreed with Dr. Mosley's opinion that Mr. Erickson became infected in 1981 because the "symptoms of acute HIV illness [primary infection] are extremely broad and non-specific. Symptoms like headache, nausea, vomiting and lethargy are equally consistent with numerous other viral illnesses." Ms. Erickson again objects that this opinion is unsupported, and she also argues that Dr. Kingsley is not qualified to testify about the association between the symptoms he listed and other unspecified viral illnesses. Although he is not an M.D., Dr. Kingsley is an epidemiologist with more than twenty years of experience, and he is qualified to testify about symptoms that are common to multiple viral illnesses. However, his opinion is unreliable for the same reason as his opinion about viral chronicity--complete lack of support. The defendants argue that Dr. Kingsley "amply" supported his opinion, but refer me only to his opinion. This is blatantly circular. His opinions alone provide insufficient indicia of reliability under Rule 702. *See Dukes*, 934 F. Supp. at 949 (holding that doctor's testimony failed to meet *Daubert* standard when doctor offered conclusions with no factual, scientific or

empirical support).

The Supreme Court decided *Daubert* seven years ago, and the defendants have had ample time to educate their expert witnesses about the type of support required for their opinions to be admissible. More than bald assertions of opinion without any support are required; this is no more than any rational person would require.[2] Experts are held to the same standards of "intellectual rigor" in testimony as in their scholarly work. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). It would be unacceptable to cite no sources for statistical evidence in a scholarly work, and it is likewise unacceptable in an expert disclosure. Dr. Kingsley is barred from offering testimony about the viral chronicity rates for factor concentrates and cryoprecipitates, and from testifying about other viral infections with the same symptoms as acute HIV illness or primary HIV infection.

B. Dr. Volberding

Ms. Erickson objects to several of the opinions expressed by Dr. Volberding in his report.[3] Dr. Volberding offers testimony

---

[2] After all, "[o]ne bare assurance is worth just as much as another." *See* G.F.W. Hegel, *The Phenomenology of Spirit* 48 (A.V. Miller trans. 1977 [1807]) (*quoted in Olander v. Bucyrus Erie Co.*, 187 F.3d 599, 608 (7th Cir. 1999)).

[3] She objects to Dr. Volberding's opinion relating to the likelihood that Mr. Erickson's hepatitis infection came from a "needlestick," a question that I consider separately below.

that Mr. Erickson's HIV infection did not interfere with the treatment protocol for hepatitis B or C because Interferon, a drug used to treat hepatitis, can be prescribed to treat patients who are HIV-positive. Ms. Erickson argues that Dr. Volberding does not provide any support for the opinion. The defendants refer me to the bibliography attached to Dr. Volberding's report and to his curriculum vitae. The nineteen articles listed in Dr. Volberding's bibliography may provide a reliable basis for his opinion; for that matter, so might the 159 original articles, twenty-nine reviews, editorials and letters, thirty-seven books, book chapters and monographs, or sixty-seven abstracts listed in his vitae. But the defendants cannot seriously expect Ms. Erickson to wade through 311 scientific texts without any references to specific pages to support the opinion in question. This would be, in legal terms, like bringing a motion and offering as support only a reference to the "United States Code." Dr. Volberding is barred from testifying about whether Mr. Erickson's HIV infection interfered with his treatment protocol for hepatitis.

Ms. Erickson also objects to Dr. Volberding's opinion that Mr. Erickson's infection with HIV predated the reported association between AIDS and factor concentrates. To the extent that Dr. Volberding has not given an opinion as to what he believes Mr. Erickson's date of infection to be, Ms. Erickson is correct that no testimony about the date of infection from Dr. Volberding would be

helpful to the jury. But he *did* adopt an assumed date to support his opinion: he said that "*[a]ssuming that Mr. Erickson was infected with HIV in 1981* [the date offered by Dr. Mosley], it is my opinion that his HIV infection precluded any regarded association between AIDS and factor concentrates" (emphasis added). Although mere experience in the field is not a reliable basis for the specific statistical and symptomatic opinions expressed by Dr. Kingsley, here Dr. Volberding's opinion does not concern a specific statistic, but instead concerns the common knowledge in the field at the time. Experts have knowledge of the standards that govern their fields--that is in part what qualifies them as experts. In 1981, Dr. Volberding was a hematologist and oncologist. Although it would be ideal to have a citation to some medical publication to support this proposition, he may testify about the standards or common knowledge of the hematology and oncology community and what the medical community knew about the association of AIDS and factor concentrates in 1981. For the same reasons (subject to the issue noted in footnote one of this opinion), Dr. Aledort may testify about his opinion that Mr. Erickson's treatment with concentrate was appropriate because "all treaters agreed with 'once concentrate, always concentrate.'" Dr. Holland may also testify to his opinion that hepatitis C was not considered by most practitioners to be a serious disease in the 1970s and early 1980s. Ms. Erickson may impeach them on cross examination if she has

evidence that the views presented by the defendants' experts were not the prevailing views.

C. Dr. Aledort

Ms. Erickson objects to three of Dr. Aledort's opinions. First, Dr. Aledort says that there is no information in the medical records to support an opinion about how much factor concentrate Mr. Erickson received in the "window period" surrounding the time Dr. Mosley believes Mr. Erickson's primary HIV infection to have occurred. Ms. Erickson argues that this is unsupported because there *are* facts in the record that document Mr. Erickson's receipt of factor concentrates. The problem with Dr. Aledort's opinion is not that it is unsupported, but that Ms. Erickson and Dr. Mosley think it is wrong. Dr. Aledort's opinion is that the medical record is insufficient to show how much factor concentrate Mr. Erickson received in the months surrounding the alleged infection in 1981. He bases this on his review of the medical record. This is a reliable basis because part of what physicians do is evaluate medical records and form opinions. Dr. Aledort may offer his opinion, and Ms. Erickson may impeach Dr. Aledort on cross examination with the information she offers in her motion.

Dr. Aledort also says that Dr. Mosley is "simply wrong" that "HIV+ individuals infected with hepatitis C could not be treated with [I]nterferon." Like Dr. Kingsley before him, Dr. Aledort offers no support for this statement. The defendants refer me to

three articles listed at the end of Dr. Aledort's report. Dr. Aledort cites to them specifically at points throughout his report, but he does not cite to the articles to support this particular opinion, and the defendants have not provided them to me, so there is no basis from which to determine if his opinion is reliable. Accordingly, Dr. Aledort may not testify to his opinion about Interferon and AIDS treatment.

Dr. Aledort's third opinion is that it was not until 1985 that it was possible to determine that 22% of hemophiliacs treated with plasma, concentrate or cryoprecipitate had significant liver pathology. Ms. Erickson objects on the grounds that it is unsupported. Dr. Aledort cites to a specific publication to support that proposition, however. *See* L.M. Aledort, et al., *A Study of Liver Biopsies and Liver Disease Among Hemophiliacs*, BLOOD (1985). His opinion has been published in a reputable journal and has probably also been subject to peer review, a factor under *Daubert*. Dr. Aledort may testify about that particular statistic, and Ms. Erickson may test the strength of the position on cross examination.

D. Dr. Lazerson

Ms. Erickson argues that I should bar Dr. Lazerson from testifying at all. Dr. Lazerson offers testimony in response to Dr. Mosley's opinions regarding the preferential use of commercial factor concentrates versus cryoprecipitates. In contrast to many

of the defendants' experts' reports, Dr. Mosley's report cites eight scholarly, published reports or articles to support his opinion that the decision of physicians to use factor concentrates over cryoprecipitates was motivated by convenience. Dr. Lazerson cites no authority for his disagreement with this opinion other than his own experience at facilities in Wisconsin and California. Under *Daubert*, Dr. Lazerson provides no indicia of reliability.

His opinions are also largely irrelevant. He concludes that the decision whether to use factor concentrates or cryoprecipitates was a function of geography and available resources, but does not cite any statistics or references for Chicago, the alleged location of infection, in the relevant time period. Nor does he address the primary question in this case. The question is whether it was negligent to administer factor concentrates to an individual like Mr. Erickson, an undisputedly mild hemophiliac who did not require frequent transfusions, not whether it was negligent to administer factor concentrates to hemophiliacs in general. Dr. Lazerson's theory that the decision to use factor concentrates over cryoprecipitates was a function of availability does not shed any light on any disputed fact, so it would not be helpful to a jury in this case. His testimony is barred.

E. The alleged "needlestick"

Drs. Volberding, Aledort and Holland all have referred to the possibility that Mr. Erickson was infected with hepatitis when he

was accidentally stuck by a needle, rather than from infected factor concentrates. All three doctors say that Mr. Erickson testified in his deposition that he had been infected by a "needlestick" when he was a child. What Mr. Erickson actually testified to is that he was told as a child that he contracted hepatitis from a needlestick, but that at the time of his deposition, he had no such recollection.

Medical professionals may rely on self-reported patient histories, so they are the type of information on which an expert witness may rely. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). But the defendants' experts rely on Mr. Erickson's deposition testimony about what some unidentified person told him when he was a child, not on his own statement to a medical professional for the purposes of diagnosis and treatment. The statement of an unknown person to a child, decades ago, about the source of an infection is not the type of statement on which a medical professional would rely, so it cannot provide support for the speculation of the defendants' experts. Therefore Drs. Volberding, Aledort and Holland may not testify to their opinions about the alleged needlestick as the probable source of Mr. Erickson's hepatitis infection.

F. The alleged history of alcohol abuse

Drs. Holland and Aledort both say in their reports that alcohol abuse can accelerate liver disease associated with

hepatitis. Dr. Aledort admits that he does not know how much alcohol Mr. Erickson consumed over his lifetime. Whether alcohol may accelerate liver disease is not a disputed question in this case, however, and because Dr. Aledort does not express an opinion about the effects of alcohol on the acceleration of Mr. Erickson's liver disease, his opinion does not assist the trier of fact and is excluded as irrelevant.

Dr. Holland suggested that Mr. Erickson's medical records "indicate a history of alcohol abuse certainly in the early 80's, when the patient was admitted to a hospital in a 'comatose' state; on another occasion he presented again at a hospital in a drunken stupor. Another emergency room record notes treatment for injuries arising from 'a barroom brawl.'" The records attached by the defendants to their response, however, clearly indicate that all three of these notations are from the same admission, on December 20, 1981, when Mr. Erickson was nineteen years old. There are three other references to alcohol in the attached medical records, all of them from patient histories: on three occasions when Mr. Erickson was treated for non-alcohol related illnesses or injuries, he said that his alcohol intake was anywhere from "a couple drinks per month" to three beers per week. Whether or not Dr. Holland is correct that this record indicates alcohol abuse, though there was no evidence offered that it does, its probative value is very low. One incident of intoxication and three admissions of an occasional

drink are not very probative of alcohol abuse. The likelihood of unfair prejudice or confusion of the issues before the jury is extremely high, so the evidence is excluded under Federal Rule of Evidence 403. Dr. Holland may not offer this testimony.

IV.

Ms. Erickson's motion is GRANTED with respect to: the statistical evidence offered by Drs. Kingsley and Holland; Dr. Kingsley's opinion about the similarity of symptoms between acute HIV illness and other viral illnesses; the opinion of Drs. Volberding and Aledort that Interferon can be used on HIV-positive patients; all of the opinions of Dr. Lazerson; and the opinions of Drs. Holland and Aledort that alcohol abuse may have contributed to Mr. Erickson's liver disease; and the opinions of Drs. Volberding, Aledort and Holland regarding the alleged needlestick. Her motion is DENIED with respect to the opinions of Drs. Volberding, Aledort and Holland regarding what was generally known or what the common practice was in their fields; Dr. Aledort's opinion that there was insufficient evidence in the record to conclude how much factor concentrate Mr. Erickson received in the "window period;" and Dr. Aledort's statistical opinion regarding liver pathology in hemophiliacs.

ENTER ORDER:

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: February 9, 2001

Copies have been mailed to:

**Attorneys for Plaintiffs**
Debra A. Thomas
Debra A. Thomas, P.C.
1200 Jorie Blvd., #329
Oak Brook, IL   60523

Richard J. Doyle
Doyle & Associates
P.O. Box 974
Danville, IL   61834-0974

Rodney E. Forbes
Seeger & Forbes
P.O. Box 878
Lafayette, IN   47902-0878

**Attorneys for Defendants**
Pam Gellen
Lowis & Gellen
200 W. Adams Street, #1900
Chicago, IL   60606

Duncan Barr
O'Connor, Cohn, Dillon & Barr
101 Howard Street, 5th Fl.
San Francisco, CA   94105-1619

Charles Albert
Albert, Bates, Whitehead & McGaugh
One S. Wacker Drive, #1990
Chicago, IL   60606

Steven J. Ellison
Sidney & Austin
One First National Plaza
Chicago, IL   60603

Hall Adams
Williams, Montgomery & John, Ltd.
20 N. Wacker Drive, #2100
Chicago, IL   60606

Steven J. Roeder
Freeborn & Peters
311 S. Wacker Drive, #3000
Chicago, IL   60606